IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TRUESCENTS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>BIG LOTS STORES, INC., ET AL,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:08-CV-508-LY<br><br>**JURY TRIAL DEMANDED** |

### DEFENDANT BIG LOTS STORES, INC.'S MOTION TO DISMISS
### OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure, Big Lots Stores, Inc. ("Big Lots") moves to dismiss or, in the alternative, moves for summary judgment with respect to plaintiff Truescents LLC's ("Truescents") trademark infringement and unfair competition claims. Truescents, after releasing any and all claims related to Big Lots' purchase of certain Truescents-branded products, now sues Big Lots for purchasing and reselling those same products without change. Neither trademark nor unfair competition law, however, prohibit the resale of genuine trademarked products. To the contrary, retailers like Big Lots are in the business of purchasing trademarked products and reselling those same unaltered products to consumers. Moreover, following Big Lots' purchase of Truescents-branded products from Truescents' former manufacturer Bocchi Laboratories, Inc. ("Bocchi"), Truescents agreed in writing to release all causes of action relating in any way to that purchase. Having already released its claims on these products, Truescents cannot now renege on its agreement in order to punish Big Lots for reselling these same products without change. Therefore, Truescents' claims should be dismissed.

- 2 -

**FACTUAL BACKGROUND**

This lawsuit arises out of Truescents' relationship with its former products manufacturer Bocchi.  Prior to 2007, Truescents authorized Bocchi to manufacture various personal care products for Truescents,[1] which Truescents subsequently sold to retail and wholesale customers.[2] In early 2007, however, Bocchi and Truescents terminated their manufacturing relationship and subsequently filed lawsuits against each other.[3]  During that litigation, Bocchi sold a portion of the inventory it had produced for Truescents (the "Truescents-branded products") to Big Lots.[4] The Truescents-branded products contained "Truescents' trademarks and Truescents/brand contact information directly on the products which included telephone contacts for Truescents."[5] Truescents alleges that, after purchasing the Truescents-branded products, Big Lots resold the same products to consumers *without change*.[6]

More than one year after Big Lots purchased the Truescents-branded products, Truescents and Bocchi settled their litigation.  In April of 2008, Truescents and Bocchi entered into a written Settlement Agreement and Release (the "Release").[7]  Pursuant to the Release, Bocchi paid Truescents $150,000 and agreed to dismiss its claims with prejudice.[8]  In exchange, Truescents dismissed its counterclaims against Bocchi with prejudice.[9]  The Release specifically covered Bocchi's sale of Truescents-branded products to Big Lots, as Truescents agreed to

---

[1] (Pl.'s First Am. Compl. ¶ 14.)

[2] (Pl.'s First Am. Compl. ¶ 10.)

[3] (Pl.'s First Am. Compl. ¶ 15); Settlement Agreement And Release ("Release Agreement") (App. A 1).

[4] (Pl.'s First Am. Compl. ¶ 16.)

[5] (Pl.'s First Am. Compl. ¶ 16.)

[6] (*See* Pl.'s First Am. Compl. ¶ 15) (failing to allege that Big Lots altered the Truescents-branded products).

[7] *See* Release Agreement (App. A 1-3).

[8] Release Agreement at Sec. 1-2 (App. A 1).

[9] *See* Release Agreement at Sec. 2 (App. A 1).

> *release, acquit, and forever discharge Bocchi . . . from any and all . . . controversies . . . [or] . . . causes of action . . . arising out of or relating in any way to . . . Bocchi's sale of Truescents trademarked goods to Big Lots . . .*"[10]

Truescents executed the Release despite allegedly having "no ability to inspect any of the product before Big Lots . . . purchased and sold the goods."[11]

By signing the written Release, both Bocchi and Truescents intended to

> *resolve fully, finally, and forever any and all disputes and claims that exist or may exist between them, arising out of or relating in any way to the Lawsuit, and any other transaction involving the parties through the date of execution of* [the Release][12]

Yet, in direct conflict with the parties' intentions, on July 1, 2008, Truescents filed this suit concerning Bocchi's pre-Release sale of Truescents-branded products to Big Lots, a transaction to which Truescents already settled, released, and resolved all of its claims.[13]

## ARGUMENT AND AUTHORITIES

A Rule 12(b)(6) motion to dismiss should be granted when a plaintiff's complaint lacks a cognizable legal theory or fails to set forth facts sufficient to support a legal theory.[14] Dismissal is proper where, as here, "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief."[15] Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[16] The purpose of summary judgment is to isolate and dispose of factually unsupported

---

[10] *See* Release Agreement at Sec. 4 (App. A 2) (emphasis added).

[11] *See* Release Agreement (App. A 1-3); (Pl.'s First Am. Compl. ¶ 17).

[12] *See* Release Agreement (App. A 1) (emphasis added).

[13] *See* Release Agreement at Sec. 4 (App. A 2).

[14] *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

[15] *Shanklin v. Fernald*, 539 F. Supp. 2d 878, 882 (W.D. Tex. 2008) (Yeakel, J.) (internal citations omitted).

[16] Fed. R. Civ. P. 56(c); *Shanklin*, 539 F. Supp. 2d at 882.

DLI-6251780v8

claims.[17]  Where, as here, no rational trier of fact could find for the nonmoving party based upon the record evidence, the Court should grant summary judgment.[18]

In this case, dismissal under either Rule 12(b)(6) or Rule 56 is proper for three reasons. <u>First</u>, in exchange for $150,000, Truescents previously agreed in writing to fully, finally, and forever release all causes of action relating in any way to Bocchi's sale of the Truescents-branded products to Big Lots.[19]  After releasing all causes of action relating to Big Lots' purchase, Truescents cannot now use trademark law to renege on its agreement and control the *same sale of products* to which it already released its claims.  <u>Second</u>, under the "first sale" doctrine, as a matter of law, there can be no consumer confusion, and consequently no liability for trademark infringement or unfair competition, where a retailer merely acquires and resells genuine trademarked goods without change.  Consumer confusion is the linchpin of both trademark and unfair competition claims.  In absence of such confusion, a first purchaser's resale of genuine trademarked goods is not unlawful.  Here, Big Lots has done no more than resell genuine Truescents-branded products.  <u>Third</u>, as a matter of law, the resale of such genuine trademarked goods without change cannot cause injury to business reputation under Texas law.

## I. The Court Should Dismiss Truescents' Claims Because Truescents Previously Released Any And All Claims Relating To Big Lots' Purchase.

Truescents should not be allowed to employ trademark law to renege on its express agreement to release all claims in any way related to Big Lots' purchase of the Truescents-branded products.  As discussed above, while litigation was pending between Truescents and its former manufacturer Bocchi, Bocchi sold the Truescents-branded products – which Bocchi produced at <u>Truescents' request</u> – to Big Lots.  As a condition of settling this litigation, Bocchi

---

[17] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[18] *See Shanklin*, 539 F. Supp. 2d at 882.

[19] *See* Release Agreement (App. A 1-2).

DLI-6251780v8

paid Truescents $150,000 and agreed to dismiss its claims with prejudice.[20]  In exchange, Truescents released and forever discharged Bocchi from any and all controversies or causes of action relating in any way to Bocchi's sale of the Truescents-branded products to Big Lots.[21]  At the time the parties signed the Release, both parties *intended to fully finally and forever resolve any and all disputes relating in any way to Big Lots' purchase*.[22]  In light of this Release, Truescents cannot credibly argue that it should now be allowed to pursue claims related that *same* purchase.  Therefore, the Court should dismiss Truescents' attempt to relitigate claims which Truescents has already settled, released, and resolved.

## II.    Truescents' Trademark and Unfair Competition Claims Should Also Be Dismissed Because As A Matter Of Law Truescents Cannot Prove That Big Lots' Sale Of The Truescents-branded Products Caused Consumer Confusion.

### A.    The Lack Of Likely Consumer Confusion Is Fatal To Truescents' Claims.

Notwithstanding the Release, Truescents' claims should be dismissed because Truescents cannot establish that Big Lots' sales caused consumer confusion.  To establish trademark infringement or unfair competition under federal law, Truescents bears the burden of proving that Big Lots' use of Truescents' trademark(s) "is likely to cause confusion among consumers as to the source, affiliation, or sponsorship of [Truescents'] products or services."[23]  The same likelihood of confusion standard governs Truescents' claims for trademark infringement and unfair competition under Texas law.[24]

---

[20] *See* Release Agreement at Sec. 1-2 (App. A 1).

[21] *See* Release Agreement (App. A 1-2).

[22] *See* Release Agreement (App. A 1).

[23] *Farouk Sys., Inc. v. Target Corp., Inc.*, 81 U.S.P.Q.2d 1151, 1153 (S.D. Tex. 2006) (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004) (internal citations omitted)); 15 U.S.C. §§ 1114(1) and 1125(a).

[24] *See Scott Fetzer Co.*, 381 F.3d at 484 ("The likelihood of confusion standard also governs [plaintiff's] claims for trademark infringement and unfair competition under Texas law."); *Farouk*, 81 U.S.P.Q.2d at 1153 ("The same [consumer confusion] standard governs trademark-infringement claims under Texas law.").

DLI-6251780v8

The absence of likely consumer confusion is dispositive of whether liability for trademark infringement or unfair competition exists.[25]  "[L]ikelihood of confusion" means that confusion is not simply possible, but ***probable***.[26]  Without a showing of likely consumer confusion, there can be no liability for trademark infringement or unfair competition.[27]

> **B.     As A Matter Of Law, Under The First Sale Doctrine, The Resale Of Genuine Trademarked Goods Cannot Cause Consumer Confusion.**

In this case, the products which Big Lots purchased and resold were the ***exact same products*** that Truescents authorized Bocchi to manufacture.  As a general rule, a trademark owner's right to control the distribution of its trademarked products ends after the first sale of the product.[28]  This "first sale" rule provides that "[r]egardless whether the defendant was authorized by the producer to sell the product, a first or subsequent purchaser's resale of genuine goods under the producer's trademark is neither infringement nor unfair competition."[29]

The reason behind the first sale rule is that trademark law is designed only to "prevent sellers from confusing or deceiving customers about the origin or make of a product."[30]  Consumer confusion does not exist when a genuine article bearing a true mark is resold.[31]

---

[25] *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 923 (Fed. Cir. 1995) ("[L]iability for unfair competition, like liability for trademark infringement, depends on likelihood of confusion.") (citing *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 590, 592 (5th Cir. 1993)).

[26] *Scott Fetzer Co.*, 381 F.3d at 483 (internal citations omitted).

[27] *See, e.g., Matrix Essentials*, 988 F.2d at 592-93 (finding no liability for trademark infringement or unfair competition as a matter of law, where no consumer confusion established); *McCoy*, 67 F.3d at 923-24 (same).

[28] *Matrix Essentials*, 988 F.2d at 590; *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995) ("[C]ourts have consistently held that, with certain well-defined exceptions, the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product.").

[29] *Taylor Made Golf Co. v. MJT Consulting Group, LLC*, 265 F. Supp. 2d 732, 739 (N.D. Tex. 2003) (internal citations and quotations omitted); *see also Farouk*, 81 U.S.P.Q.2d at 1153 ("[R]esellers are permitted to use a trademark on their products to honestly identify them as being, or including, the product to which the trademark belongs.") (internal citations omitted).

[30] *Taylor Made*, 265 F. Supp. 2d at 739 (internal citations and quotations omitted).

[31] *See Id.*; *McCoy*, 67 F.3d at 924 ("It is a tautology that a consumer purchasing genuine goods receives exactly what the consumer expects to receive: genuine goods.  The consumer is not confused or deceived about the source or quality of the product.") (citing *Matrix Essentials*, 988 F.2d at 951).

DLI-6251780v8

Accordingly, in *Matrix Essentials*, the Fifth Circuit held as a matter of law that no likelihood of confusion can arise where a retailer merely stocks and resells unadulterated, properly labeled trademarked goods, even if the sale is unauthorized.[32] There, plaintiff Matrix Essentials ("Matrix") produced and sold its hair care products exclusively through salons.[33] As here, the defendant, which owned two retail drug stores, obtained Matrix's trademarked products and resold them in its drugstores.[34] Matrix filed suit, alleging trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).[35] On appeal, the Fifth Circuit affirmed the district court's grant of summary judgment in favor of the defendant retail owner, rejecting Matrix's argument that the defendant's actions caused consumer confusion.[36] Rather, the defendant's resale of Matrix's products "could not cause confusion as to manufacturer or sponsorship because the goods were manufactured and labeled by Matrix."[37] Matrix made no allegation that the defendant altered Matrix's product in any way.[38] Thus, no consumer confusion and no infringement was possible because the mark on the products properly indicated that Matrix was the ultimate source of genuine Matrix products.[39]

The rule of *Matrix Essentials* is simple: "so long as a trademark indicates that the mark-owner is the ultimate source of approval for the marked product, there can be no consumer

---

[32] *See Matrix Essentials,* 988 F.2d at 592-93; *McCoy*, 67 F.3d at 924 ("*Matrix Essentials* thus squarely holds that the sale of genuine goods, even if unauthorized, cannot cause confusion and consequently cannot constitute trademark infringement or unfair competition."); see *also Sebastian*, 53 F.3d at 1077-76 (relying on *Matrix Essentials* and concluding that conduct must go beyond mere stocking and resale of genuine products to support infringement).

[33] *See Matrix Essentials*, 988 F.2d at 589.

[34] *Id*.

[35] *Id*.

[36] *Id*. at 593.

[37] *Id*. at 592.

[38] *See Id*. at 590-93.

[39] *See Id*.

confusion and, consequently, no infringement."[40]  Indeed, in *McCoy*, the Federal Circuit, applying Fifth Circuit law, relied on *Matrix Essentials* in holding that as a matter of law a knife manufacturer's resale of knives which it produced for a trademark owner did constitute trademark infringement or unfair competition.[41]  There, the court reasoned that:

> the knives resold by Mitsuboshi were genuine. They were the *same* knives that Mitsuboshi would have delivered to McCoy if McCoy had not wrongfully refused to pay for them. ***Because the knives were genuine, Matrix Essentials dictates that Mitsuboshi did not cause consumer confusion by reselling them***. That McCoy did not authorize resale is immaterial. Therefore, this court holds as a matter of law that Mitsuboshi did not commit trademark infringement or unfair competition by reselling the knives.[42]

Here, like the defendants in *Matrix Essentials* and *McCoy*, Big Lots merely acquired and resold Truescents' genuine, properly labeled products.  Bocchi manufactured the Truescents-branded products at Truescents' request.[43]  Truescents has not alleged that either Bocchi or Big Lots altered these products at any time.  Accordingly, Big Lots merely purchased and resold properly labeled *genuine* products, which indicated Truescents as their ultimate source.  Under these circumstances, no consumer confusion is possible as a matter of law.[44]  Thus, Truescents' trademark and unfair competition claims should be dismissed.

**C.     Truescents Cannot Credibly Claim That Big Lots' Sale Of The Truescents-branded Products Interfered With Truescents' Quality Control Efforts.**

In a clear effort to revive its claims in light of the first sale rule, Truescents alleges that it had "no ability to inspect any of the product before Big Lots . . . purchased and sold the

---

[40] *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 846 (5th Cir. 2006).

[41] *McCoy*, 67 F.3d at 924 (reversing a jury's verdict).

[42] *Id.* (emphasis added).

[43] (Pl.'s First Am. Compl. ¶ 14.)

[44] *See Matrix Essentials*, 988 F.2d at 592-93; *McCoy*, 67 F.3d at 923-24.

- 8 -

goods."[45]  To the extent that this assertion asks this Court to equate Truescents' alleged failure to inspect its product's' pre-sale quality to a material difference affecting the products' quality or genuineness, the assertion should be rejected.  Truescents has not alleged that Big Lots has altered the Truescents-branded products in any way.  "[A]bsent evidence of tainting or mishandling, an unauthorized sale does not create a material difference on the basis of quality."[46]

Moreover, more than one year after Big Lots' purchase of products from Bocchi, Truescents expressly released all claims in any way related to that purchase.[47]  Truescents did not raise its alleged inability to inspect product quality when Truescents signed the Release.  Only now – more than seventeen months after Big Lots' purchase – has Truescents questioned the Truescents-branded products' quality.  Nonetheless, the facts remain that Truescents authorized Bocchi to produce the products Truescents now seeks to control, and Truescents later agreed to release all claims relating to Big Lots' purchase of those same products.[48]  Once a trademark owner authorizes the production or sale of its products, it can no longer claim that the resale of those same products (without change) interferes with the mark owner's ability to control its product's pre-sale quality.[49]  Therefore, Truescents' trademark and unfair competition claims should be dismissed.[50]

---

[45] (Pl.'s First Am. Compl. ¶ 17.)

[46] *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 735-36 (Tex. App.—Austin 2000), *pet. denied*; *see also Matrix Essentials*, 988 F.2d at 591 (rejecting plaintiff's argument that inability to control aspects of products' quality caused an exception to first sale doctrine, where products had not been altered and no defect or potential defect in the products existed).

[47] *See* Release Agreement at Sec. 4 (App. A 2) (executed April 2008).

[48] (*See* Pl.'s First Am. Compl. ¶ 14); Release Agreement at Sec. 4 (App. A 2).

[49] *See Matrix Essentials*, 988 F.2d 587 (rejecting quality control argument as a matter of law where products were clearly authorized by plaintiff); *Monte Carlo Shirt, Inc. v. Daewoo Int'l (Am.) Corp.*, 707 F.2d 1054, 1058 n.5 (9th Cir. 1983) (rejecting quality control argument where surplus shirts were planned and sponsored by plaintiff); *John Paul Mitchell*, 17 S.W.3d at 736 (rejecting quality control argument under Texas law where products were manufactured by plaintiff).

[50] *Matrix Essentials*, 988 F.2d at 592.

### III. As A Matter Of Law, The Big Lots' Resale Of Genuine Trademarked Goods Cannot Cause Injury To Business Reputation Under Texas Law.

Finally, Big Lots' resale of genuine Truescents-branded products cannot cause injury to Truescents' business reputation under Tex. Bus. & Com. Code § 16.29.[51]  Anti-dilution laws are not "a tool for manufacturers to police independent repair shops and second-hand sales."[52]  Accordingly, in *John Paul Mitchell*, the Texas Court of Appeals rejected business injury claims made by a hair product manufacturer against an unauthorized retailer who merely resold the manufacturer's genuine products, holding that "as a matter of law there can be no blurring or tarnishment under *section* 16.29 where a retailer has resold the mark owner's genuine products."[53]

Here, Big Lots merely resold Truescents' ***genuine*** products.  Truescents has not alleged that the products contain any defect or that they were altered.  Therefore, regardless of authorization, Truescents cannot prevail on its claim under Section 16.29.[54]

## CONCLUSION

For the foregoing reasons, Big Lots respectfully requests that the Court grant its motion to dismiss or, in the alternative, motion for summary judgment.

---

[51] *See John Paul Mitchell*, 17 S.W.3d at 737; *see also, Scott Fetzer Co.*, 381 F.3d 477 (holding as a matter of law that resale of reconditioned or unchanged goods cannot constitute dilution by tarnishment under federal law).

[52] *Scott Fetzer*, 381 F.3d at 490.

[53] *See John Paul Mitchell*, 17 S.W.3d at 728, 736-37 (internal citations and quotations omitted) (emphasis original).

[54] *John Paul Mitchell*, 17 S.W.3d at 736-37.

DLI-6251780v8

Dated: June 8, 2009

Respectfully submitted,

/s/ Craig F. Simon
Craig F. Simon
Texas State Bar No. 00784968
Daniel T. Conrad (admitted *pro hac vice*)
Texas State Bar No. 24026608
Chijioke E. Offor (admitted *pro hac vice*)
Texas State Bar No. 24065840
JONES DAY
2727 North Harwood Street
Dallas, TX  75201-1515
Telephone:  (214) 220-3939
Facsimile:   (214) 969-5100

ATTORNEYS FOR DEFENDANT
BIG LOTS STORES, INC.

DLI-6251780v8

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that an electronic copy of Defendant Big Lots Stores, Inc.'s Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment is being served upon:

>Dirk M. Jordan
>1717 West 6th Street, Suite 420
>Austin , TX 78703
>Email: dirk@dirkjordan.com
>
>Matthew J. Booth
>Matthew J. Booth & Associates, PLLC
>P.O. Box 50010
>Austin , TX 78763-0100
>Email: matthew.booth@boothlaw.com
>
>Michael T. Callan
>Peterson Russell Kelly, PLLC
>10900 NE 4th St., Ste 1850
>Bellevue , WA 98004
>Email: mcallan@prklaw.com
>
>Jennifer Barrett Poppe
>Vinson & Elkins
>The Terrace 7
>2801 Via Fortuna, Suite 100
>Austin , TX 78746
>Email: jpoppe@velaw.com
>
>Nina M. Hess Hsu
>Vinson & Elkins
>2801 Via Fortuna, Suite 100
>Austin , TX 78746
>Email: nhesshsu@velaw.com

via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1) on June 8, 2009.

>/s/ Craig F. Simon